# LINCOLN GAS & ELECTRIC LIGHT COMPANY v. CITY OF LINCOLN ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 52.   Argued October 5, 8, 1917.—Decided June 2, 1919.

A gas company, pending a suit to declare a rate ordinance confiscatory, put the rate in effect as a test, under a stipulation that such action should not be construed as an acceptance of or compliance with the ordinance or be "shown in evidence or presented to the court in the above entitled cause, or used in any way by either party to influence the action of the court in the disposition of the case." *Held,* that this in effect relieved the defendant from obligation to observe the

effect of the reduced rate or prepare to meet inferences drawn from it, and hence afforded a reason why a petition for leave to file a bill of review in the District Court, based on the test, should not be granted by this court. P. 261.

Further grounds for refusing such leave are found in the delay of the plaintiff in instituting the test and in the fact that the results relied on were offse‑ by an error committed in the plaintiff's favor. P. 262.

The District Court, having acquired jurisdiction through a bill presenting a substantial controversy under the Federal Constitution, has power to dispose of an issue fairly within the pleadings, without passing on its federal aspect, by application of the constitution of the State. P. 263.

In a suit challenging the constitutionality of ordinances fixing gas rates and laying an occupation tax, where the District Court upheld the rates but declared the tax void, and, after an appeal in which the tax ruling was not assigned as error or referred to by this court in its opinion or mandate, the rate, on a further trial, was again sustained and the bill dismissed by a final decree, without further mention of the tax, *held*, that the earlier adjudication was to be taken as a part of the final decree, establishing beyond collateral attack in this court or elsewhere that the tax was void; but that the decree might properly be modified to reiterate such earlier adjudication. *Id.*

In a rate case, involving questions, and much evidence, concerning plant valuation, methods of estimating and applying depreciation charges, working capital, going concern value, rate of return, etc., this court is not called upon to recite the substance of such evidence or review the master's findings made after proper investigation. P. 266.

Eight per cent. being the lowest rate generally sought and obtained upon capital invested in banking, merchandising and other business in the vicinity, and 7 per cent. the legal rate in the State, the court cannot approve a finding that no rate yielding as much as 6 per cent. could be deemed confiscatory in the case of the complaining gas company; nor is the finding justified upon the ground that the company had such a monopoly and guaranty of profits as would permit of such restriction. P. 267.

In the absence of any finding or clear evidence that past earnings, invested in a gas company's business, were excessive, a finding restricting the "going value" on the theory that they were, is erroneous. *Id.*

In such a suit, occupation taxes which have been conclusively adjudged void and have not been paid should not be allowed as operating expenses. P. 267.

Having regard for the entire period under investigation, and in the presence of many doubtful items, this court can not hold the rate ordinance in question void, in the absence of an actual and timely test of its practical operation. *Id.*

The decree dismissing the bill without qualification is so modified as to be expressly without prejudice to the commencement of a new suit, in which complainant may show if it can, as a result of its practical test since May 1, 1915, or upon evidence of values, costs of operation and rates of return upon capital as they stand when such suit is brought and are likely to continue, that the rate in question is confiscatory under the new conditions. P. 268.

The court notices judicially that, principally owing to the war, costs of labor and supplies have advanced greatly since the ordinance was adopted, and largely since the case was last heard in the court below, and that annual returns upon capital and enterprise the world over have materially increased, so that what would have been a proper return for capital in gas plants and other public utilities a few years ago furnishes no safe criterion for the present or the future. *Id.*

Modified and affirmed.

THE case is stated in the opinion.

_ Mr. *Robert Burns* and Mr. *Edmund C. Strode*, with whom Mr. *Charles A. Frueauff* and Mr. *Dewey C. Bailey, Jr.*, were on the briefs, for appellant.

Mr. *W. M. Morning* and Mr. *C. Petrus Peterson* for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is an appeal from the final decree of the district court dismissing the bill of complaint in a suit brought by the Lincoln Gas and Electric Light Company, a Nebraska corporation, against the City of Lincoln and

its officials praying for an injunction to restrain enforcement of an ordinance of the city adopted November 19, 1906, which had the effect of reducing complainant's charges for gas from $1.20 to $1 per 1,000 cubic feet, and an ordinance adopted December 10, 1906, assessing an annual occupation tax upon gas companies in the city.

The action was instituted in December, 1906, without previous test of the $1 rate, in the then Circuit Court of the United States for the District of Nebraska. Besides grounds not pressed, the rate ordinance was attacked upon the ground that its enforcement would deprive complainant of its property without due process of law, in contravention of the Fourteenth Amendment. The tax ordinance was attacked upon grounds of state law, and also upon the ground that it was violative of the "due process" and "equal protection" clauses of the Fourteenth Amendment. Upon final hearing the court, by decree entered April 6, 1909, dismissed the bill as to the rate ordinance, without prejudice to the commencement of a new action; but decreed that the ordinance levying an occupation tax violated the constitution of Nebraska and was for this reason illegal, and granted a permanent injunction against its enforcement. 182 Fed. Rep. 926.

Upon appeal by complainant to this court it was found that there was a great mass of conflicting evidence relating to the value of complainant's plant, the cost of operation, and the gross and net income; that the case had not been referred to a master, nor had specific findings of fact been made by the court below, but only general conclusions which were found not to be sufficient in view of errors assigned which opened up substantially the entire case. For this reason the decree was reversed and the cause remanded to the district court with directions to refer it to a master with leave to both parties to take additional evidence. A temporary injunction

which had been granted in the court below and continued in force until final decree and afterwards pending the appeal, under a bond conditioned to account for overcharges if the rate ordinance should be sustained, was by the decree of reversal continued in force until final decree in the court below, upon condition that a new bond with sureties were given to account for overcharges to consumers since the original restraining order, in the event the ordinance should be sustained. 223 U. S. 349.

Upon the going down of the mandate, the district court referred the case (July, 1912) to a master, to take the proofs and report his findings of fact and of law. After a full hearing he made an elaborate report (September, 1914) to which complainant filed about 125 exceptions, with a motion to recommit the case to the master for additional findings, which motion was denied. The master found the rate ordinance was not confiscatory, and (differing from the former decision of the circuit court) held that the occupation tax ordinance was valid, and included the tax as an operating expense. Upon the hearing of the exceptions the report of the master was confirmed by the district court, and the bill dismissed as to the rate ordinance, by decree entered September 23, 1915; the judge filing a memorandum to the effect that he did not agree with the master as to the validity of the occupation tax ordinance, but deemed it unnecessary to pass upon this in the decree, since the result reached by the master would only be strengthened by adjudging the tax invalid, while if the judge should agree with the master upon that question he still would confirm the report. In other words, assuming the occupation tax ordinance to be valid, the addition of this tax to the annual outgoes of complainant would still leave the $1 rate compensatory.

Complainant brings the case to this court by appeal, with about 120 assignments of error, one of which is that

the district court erred in not decreeing that the occupation tax ordinance was in violation of the Fourteenth Amendment in that it amounted to a denial of the equal protection of the laws.

Pending the hearing upon the master's report, and on or about May 1, 1915, complainant, notwithstanding the injunction *pendente lite*, put into effect a net rate of $1 per thousand feet for gas, and has maintained it since.

Upon the strength of this test, and before the argument of this the second appeal, complainant presented to us a petition for leave to file a bill of review in the court below upon the ground that, according to the master's findings, complainant, in the year 1907, earned so small a return that the rate ordinance would have been confiscatory upon the valuation as found by him, but for this additional finding: "All human experience has shown that increased consumption follows quickly a reduction in the price of commodities, and the evidence in this case satisfactorily shows that gas is no exception to the rule."

The petition averred that the experience of complainant in an actual test of the reduced rate during a considerable period since May 1, 1915, showed that the view of the master was erroneous, and in fact under actual operating conditions there was no increase of consumption.

The application for leave to file a bill of review will be denied, for the following reasons:

First, because the $1 rate was put into effect pursuant to a written stipulation made between the parties in the cause to the effect that the action of the company in so doing should not be construed as an acceptance of or compliance with the ordinance in controversy, and should not be "shown in evidence or presented to the court in the above entitled cause, or used in any way by either party to influence the action of the court in the disposition of the case." Hence defendant was not called upon

to observe the effect of the reduced rate, or prepare to meet inferences drawn therefrom.

Secondly, because complainant might have made a practical test of the ordinance rate before bringing this suit for an injunction, and certainly ought to have resorted to the test long before it did so. As early as the month of January, 1909, this court, in two notable rate cases, indicated its view of the importance, in any but a very clear case, of subjecting prescribed rates to the test of practical experience before attacking them in the courts. *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 16, 18; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 54. When those decisions were announced this case was pending in the circuit court, and shortly thereafter it was decided adversely to complainant upon the question of the validity of the rate, the *Knoxville* and *Willcox Cases* being cited. 182 Fed. Rep. 926, 929. Then, if not before, complainant might have made a practical test of the sufficiency of the rate, instead of waiting six years longer before doing so. The litigation has been extremely tedious and burdensome to both sides, and it ought now to be brought to a conclusion upon the record as it stands.

And thirdly, the argument based upon the master's finding as to the return that complainant would have earned in the year 1907 under the prescribed rates is vitiated by the fact that he included as an operating expense $4,466, the amount of the estimated occupation tax, which was not paid and (as we shall see) has been conclusively adjudged in this suit to be unenforceable. Eliminating this would increase the net return for the year approximately one per cent. upon the investment.

Coming to the merits, we will deal first with the occupation tax ordinance. This is important not only because considerable sums of unpaid taxes have accumulated pending the litigation, but because of the effect of the tax, if sustained, upon the question of the adequacy of the rate.

The ordinance imposes an occupation tax upon all gas companies manufacturing and furnishing gas to the inhabitants of the City of Lincoln, equivalent to 2½ per cent. of their gross receipts derived from that business. It was attacked in the bill as being "partial, discriminatory, unreasonable and oppressive in this: It imposes upon your orator an onerous tax burden to which the business and occupations of other persons within said city are not subjected;" and the bill alleged among other things that the Lincoln Traction Company held a franchise for furnishing electricity to the public in said city, under which it was supplying light, heat, and power in competition with complainant's gas business, and that the city had not subjected this business of the traction company to any occupation tax; wherefore the ordinance "operates to deprive your orator of the equal protection of the laws, imposes a discriminatory burden upon your orator, . . . and deprives your orator of its franchise rights and privileges and of its properties without due process of law," thus being violative of the due process and equal protection provisions of the Fourteenth Amendment. The circuit court deemed that this raised the question of the invalidity of the ordinance under the uniformity provision of the state constitution, and held it was invalid as being in contravention thereof. 182 Fed. Rep. 926, 927, 929. The city requested a modification of the opinion and decree in this respect, on the ground that the invalidity of the ordinance under the state laws and constitution was not charged in the bill. This application was denied.

Neither the city nor any other defendant appealed from that part of the decree which adjudged the occupation tax ordinance void and granted an injunction against its enforcement. Complainant appealed only from that part which was adverse to it upon the question of the validity of the rate ordinance. None of its assignments

of error touched upon the tax ordinance; but in its brief in this court upon the first appeal complainant declared that its bill had assailed the tax ordinance only upon the ground that it was in violation of the equal protection clause of the Fourteenth Amendment; that the bill was drawn upon the theory that this ordinance, like the rate ordinance, could only be assailed in a court of the United States upon the ground "that it was violative of the Constitution of the United States"; apparently overlooking that, even without diversity of citizenship (and there was none), if the bill presented a substantial controversy under the Constitution of the United States, and the requisite amount was involved, the jurisdiction extended to the determination of all questions, including questions of state law, and irrespective of the disposition made of the federal questions. *Greene v. Louisville & Interurban R. R. Co.*, 244 U. S. 499, 508. It was said in the brief that the decree of the circuit court against the validity of the occupation tax ordinance was a nullity because the subject-matter was not cognizable in a court of the United States and the issue decided was not tendered by the bill. Upon the ground that the decree might constitute no bar to the collection of the occupation taxes, and the amount of these if collected would reduce complainant's returns and render the rate ordinance if sustained still more burdensome, appellant asked this court to pass upon the validity of the tax ordinance upon the federal grounds asserted in the bill.

Naturally this court ignored the suggestion, its jurisdiction over the question not having been invoked by an appeal, and so it happened that the occupation tax ordinance was not mentioned in the opinion or in the mandate.

There is nothing before us to show what decree, if any, was made by the district court upon the going down of the mandate, beyond a mere order of reference to the

master. The final decree made upon the confirmation of his report says nothing upon the subject of the occupation tax ordinance. Its language is "That the bill of complaint herein, so far as the same relates to the ordinance of the City of Lincoln establishing a rate of charges for gas in said city be, and the same is, hereby dismissed, and the restraining order heretofore granted against the enforcement of said ordinance is hereby dissolved." Upon this record, it is very clear that so much of the decree of the circuit court entered April 6, 1909, as held the occupation tax ordinance void and restrained its enforcement was untouched by the former appeal and unaffected by the subsequent proceedings. The decree now under review does not modify the effect of the former decree upon this subject; hence, the adjudication of the invalidity of the occupation tax ordinance and the award of an injunction to restrain its enforcement are to be taken as a part of the final decree in the cause. We deem it entirely clear, also, that the issue of the validity of that ordinance upon grounds of state law was fairly within the pleadings, and that this part of the decree is impregnable against collateral attack, in this court or elsewhere. This being so, the assignment that the district court erred in its decree of September 23, 1915, in not decreeing that the occupation tax ordinance was in violation of the Fourteenth Amendment because amounting to a denial of the equal protection of the laws, is groundless; there was no occasion for the court to make any decree to that effect, since the matter had been conclusively determined against the validity of this ordinance by the final decree of April 6, 1909, which remained in this respect unappealed from. In order to render the matter free from doubt the decree of September 23, 1915, will now be modified by embodying in it a reiteration of that part of the decree of April 6, 1909, which held the occupation tax ordinance void and restrained its enforcement.

Parenthetically, it may be stated that on March 16, 1908, the city council passed an ordinance imposing a like occupation tax upon corporations selling electricity for light or power purposes, but at the rate of only 2 per cent. of their gross receipts; that on December 13, 1909, both occupation taxes were repealed, and gas and electric companies alike were subjected thereafter to an occupation tax equal to 3 per cent. of their gross receipts; and that in July, 1916, the Supreme Court of Nebraska adjudged the occupation tax ordinance of December 10, 1906, to be invalid, following the decision of the circuit court in this case; and on the same day held that the enforcement against complainant of an occupation tax under the ordinance of December, 1909, must be stayed pending the final determination of the present case. *City of Lincoln* v. *Lincoln Gas & Electric Light Co.*, (two cases), 100 Nebraska, 182, 188.

The attack upon the rate ordinance brings under consideration questions of the valuation of the plant, the proper method of estimating and applying depreciation charges, questions of working capital, going concern value, the propriety of various items of operating expense, the rate of return that reasonably ought to be allowed upon capital invested in a plant and business of this character in Nebraska, and the other questions usual in such cases. The special master conducted a patient and elaborate investigation. An enormous mass of evidence was produced before him, and analyzed in his report. In abridged form, it occupies nearly 2,000 pages of printed transcript in this court, besides numerous tabular exhibits. It would be impossible, within reasonable limits, to recite the substance of the evidence or review the master's findings. We do not feel called upon to do this. *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 17. The findings are subjected to numerous and minute criticisms, and some of these seem to possess

force. We cannot approve the finding that no rate yielding as much as 6 per cent. upon the invested capital could be regarded as confiscatory, in view of the undisputed evidence, accepted by the master, that 8 per cent. was the lowest rate sought and generally obtained as a return upon capital invested in banking, merchandising, and other business in the vicinity; 7 per cent. being the "legal rate" of interest in Nebraska. Complainant had not such a monopoly nor were its profits "virtually guaranteed" in such a sense as to permit the public authorities to restrict it to a return of 6 per cent. upon its invested capital. It is not entirely clear, however, that the rate ordinance did so restrict it. Again, we question the propriety of the master's treatment of "going value," which he seems to have estimated at less than otherwise he would have placed it upon the theory that the company's business had been developed, at the expense of the public, in the expenditure of past earnings exceeding a fair return upon the capital invested, and this without any finding, or any clear evidence to which our attention has been called, that past earnings were excessive. On the other hand, the master erred in favor of complainant by allowing as operating expenses occupation taxes for the years 1907 to 1909, inclusive, these taxes not having been paid and the taxing ordinance applicable to that period having been held invalid by the decree of the circuit court entered April 6, 1909, and so held since his report by the state supreme court. And it is possible he erred in allowing occupation taxes for the year 1910 and subsequent years, since these were not in fact paid. As we have seen, the occupation tax erroneously allowed for the crucial year 1907 amounted to more than 1 per cent. upon the invested capital at the master's valuation. He also appears to have been unduly liberal to the company in the allowance for working capital, and in some other items of valuation, as well as in respect of some

expenditures allowed as operating expense. Without going into details, we content ourselves with announcing our general conclusion that, having regard to the entire period under investigation, we are unable to say that the master erred in holding that the ordinance was not shown to have been confiscatory in its effect. It is probable that in the years 1907 and 1912 the net return was close to the line, if not below it; but that in the other years examined it was at least 7 per cent.; and there are too many doubtful items for us to adjudge the ordinance void, in the absence of an actual and timely test.

The decree dismissed the bill, however, so far as it related to the rate ordinance, without reservation or qualification. Perhaps it would go without saying, but in our opinion the decree ought to be modified so as to permit complainant to make another application to the courts for relief against the operation of the ordinance hereafter, if it can show, as a result of its practical test of the dollar rate since May 1, 1915, or upon evidence respecting values, costs of operation, and the current rates of return upon capital as they stand at the time of bringing suit and are likely to continue thereafter, that the rate ordinance is confiscatory in its effect under the new conditions. It is a matter of common knowledge that, owing principally to the world war, the costs of labor and supplies of every kind have greatly advanced since the ordinance was adopted, and largely since this cause was last heard in the court below. And it is equally well known that annual returns upon capital and enterprise the world over have materially increased, so that what would have been a proper rate of return for capital invested in gas plants and similar public utilities a few years ago furnishes no safe criterion for the present or for the future.

The final decree of September 23, 1915, will be modified by embodying in it a reiteration of that part of the

final decree of April 6, 1909, which held that the ordinance of the City of Lincoln, approved December 10, 1906, levying an occupation tax against complainant, was illegal and void because violative of the constitution of the State of Nebraska, and that the enforcement of the same as to complainant should be perpetually enjoined.

The decree of September 23, 1915, will be further modified so that the dismissal of the bill of complaint, in so far as it relates to the ordinance of the City of Lincoln approved November 19, 1906, establishing a rate of charges for gas in said city, shall be without prejudice to the commencement of a new action to restrain the enforcement of said ordinance hereafter, and

*Decree, as thus modified, affirmed with costs.*